UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CONROY A. SIMPSON, JR. an infant by
his father and natural guardian,
CONROY A. SIMPSON, SR., and
CONROY A. SIMPSON, SR., individually,

        Plaintiffs,            <u>MEMORANDUM & ORDER</u>
                              09-CV-0449(JS)(MLO)
     -against-

UNIONDALE UNION FREE SCHOOL DISTRICT,
ANNETTE O'FERRALL,[1] individually and
in the capacity as Principal of Turtle
Hook Middle School, MARCIA LAKE,
individually and in the capacity of
"parent volunteer" and/or President or
Past President of Turtle Hook Middle
School Parents Teacher Association (PTA),
CHERISE DALY, JOHN DOES 1-250,
JANE DOES 1-250, individually and in
their capacity as employees of Uniondale
Union Free School District,

        Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiffs:    Richard Anton Kubick, Jr., Esq.
                 7 East 14th Street
                 New York, NY 10003

For Defendants:
Uniondale Union    Julie Ann Rivera, Esq.
Free School Dist.  Lewis R. Silverman, Esq.
                 Rutherford & Christie LLP
                 369 Lexington Avenue
                 New York, NY 10017

Annette O'Ferrall  Guy William Germano
                 Law Offices of Frederick K. Brewington
                 50 Clinton Street, Suite 501
                 Hempstead, NY 11550

Other Defendants[2]  No Appearances

---

[1]    Although listed in the Complaint as "O'Ferrell", it appears from the remainder of the filings that Defendant's name is "O'Ferrall."

SEYBERT, District Judge:

On February 4, 2009, Plaintiffs commenced this action alleging a "violation of privacy rights" under the Family Educational Rights and Privacy Act ("FERPA"), 42 U.S.C. §§ 1981, 1983, and 1985. Additionally, Plaintiffs assert that the infant Plaintiff has suffered a violation of his right to "education free of discrimination[,]" but make only passing reference to the statutory basis for their claims. Finally, the Complaint alleges a claim for negligent/intentional infliction of emotional distress and negligent hiring supervision.

Pending before the Court are motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants Uniondale Union Free School District ("District" and Annette O'Ferrall ("O'Ferrall"). For the reasons that follow, the District's and O'Ferrall's motions are GRANTED.

BACKGROUND[3]

The District is a municipal corporation established under New York State Education Law in order to provide a variety

---

[2]    In a letter submission dated June 9, 2009, Defendant Uniondale Union Free School District points out that Plaintiffs attempted to serve Defendants Marcia Lake ("Lake") and Cherise Daly ("Daly") by way of serving the District. The District points out, however, that these Defendants are not District employees, and, therefore, the District cannot and did not accept service on their behalf.  The District further states that Lake is a PTA member and Daly is a former student.  Plaintiffs did not respond to these assertions.  The Court, therefore, finds that Plaintiffs have failed to establish proper service for Lake or Daly.
[3]    All of the facts are taken from the Complaint or documents upon which the Complaint relies, and are presumed to be true for purposes of this Order.

of educational programs and services to the residents within its jurisdiction. Plaintiff Conroy A. Simpson, Sr. is the parent of Conroy A. Simpson, Jr. ("CJ") (collectively, "Plaintiffs"), a student who attends school within the District. Casilda Roper-Simpson ("Roper-Simpson"), CJ's mother and a non-party in this matter, is a trustee of the District's Board of Education.

Defendant O'Ferrall was the principal of Turtle Hook Middle School. During the 2006-2007 school year, O'Ferrall promoted a non-District art competition which was sponsored by Nostrand Gardens Civic Association ("Nostrand Gardens"). Students who participated in the competition were required to submit either a piece of art, sculpture or poetry. At some point, a piece of CJ's work was submitted to the competition, but it is unclear who made the submission. Although CJ did not win the competition, Nostrand Gardens provided him, along with the other participants, with a certificate of participation. While taking his Science final exam, someone in the District delivered the certificate to him.

Upon bringing the certificate home, CJ showed his mother. Shortly thereafter, Roper-Simpson contacted school guidance counselor Caron Cox ("Cox") to inquire as to how CJ was entered into the competition and how he came to receive the certificate. In a letter dated June 19, 2007, Roper-Simpson wrote a letter to

3

O'Ferrall and Cox expressing, <u>inter alia</u>, her "annoyance" with not being notified of any "ceremony" for the certificate of participation. Approximately one week later, on or about June 26, 2007, O'Ferrall was informed by the District's Superintendent that a recommendation would be made to the Board for the termination of her employment. On August 14, 2007, after exhausting her grievances to the recommendation, O'Ferrall submitted her resignation.

For reasons that remain unclear, on or about November 16, 2007, O'Ferrall submitted a three-page letter to the Board of Education complaining about her termination. In her letter, O'Ferrall discusses her achievements, her issues with the District's Central Administration, and the Nostrand Gardens competition. While she made reference to the letter from Roper-Simpson regarding the competition and the participation letter given to CJ, O'Ferrall never mentions CJ by name. She did, however, attach a copy of the list of the winners of the Nostrand Gardens' competition. CJ's name does not appear on that list.

Based on this information, Plaintiffs commenced this case.

DISCUSSION

I.   <u>Standard Of Review Under Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion, plaintiff's

complaint must set forth sufficient factual allegations to "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). This standard has been explained as one of "flexible plausibility . . . , which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original) (internal citations omitted). While the Complaint "does not need detailed factual allegations," Twombly, 127 S. Ct. at 1964, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action. Id. at 1964-65. In essence, a plaintiff is required to plead enough facts to provide the defendant with fair notice of the basis of the plaintiff's claims. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002).

When deciding a Rule 12(b)(6) motion to dismiss, the district court must presume to be true all facts contained in the complaint, and must draw all reasonable inferences in favor of the Plaintiff. Chambers v. Time Warner, Inc, 282 F.3d 147, 152 (2d Cir. 2007); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Generally, the court's review is limited to reviewing only the facts contained within the four corners of the

complaint, <u>Chambers</u>, 282 F.3d at 153; however, the complaint is treated as inclusive of "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991); <u>Cosmas v. Hassett</u>, 886 F.2d 8, 13 (2d Cir. 1989). In conducting its review, the court must "merely . . . assess the legal feasibility of the complaint, not . . . assay the weight of the evidence which might be offered in support thereof." <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980).[4]

## II. <u>20 U.S.C. § 1232g</u>

As the District properly points out, FERPA states that no federal funding should be made available to an educational institution that has a practice or policy of releasing education records to unauthorized personnel. 20 U.S.C. § 1232g. Under 20 U.S.C. § 1232g(f)-(g), an aggrieved individual may seek administrative remedies for the enforcement of FERPA provisions; however, FERPA does not create a private cause of action by itself. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 276, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); <u>see also</u> <u>Rabin v. Wilson-Coker</u>, 362 F.3d 190, 201 (2d Cir. 2004). Moreover, FERPA is not enforceable under Section 1983.

As the <u>Gonzaga</u> Court pointed out:

---

[4]     Here, Plaintiffs' Complaint, while sparse, references the letters described, <u>supra</u>.

Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983. But the initial inquiry-determining whether a statute confers any right at all-is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute "confer[s] rights on a particular class of persons." California v. Sierra Club, 451 U.S. 287, 294, 101 S. Ct. 1775, 68 L. Ed. 2d 101 (1981). This makes obvious sense, since § 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, i.e., rights independently "secured by the Constitution and laws" of the United States. "[O]ne cannot go into court and claim a 'violation of § 1983'-for § 1983 by itself does not protect anyone against anything." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979).

Gonzaga Univ., 536 U.S. at 284-85 (internal citation and footnote omitted). But the starting point in this analysis is whether Congress intended to create a right at all.

We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is rights, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section. This being so, we further reject the notion that our implied right of action cases are separate and distinct from

our § 1983 cases.  To the contrary, our
implied right of action cases should guide
the determination of whether a statute
confers rights enforceable under § 1983.

<u>Id.</u> at 284.  Thus, the Court found

there is no question that FERPA's
nondisclosure provisions fail to confer
enforceable rights.  To begin with, the
provisions entirely lack the sort of
"rights-creating" language critical to
showing the requisite congressional intent
to create new rights.  Unlike the
individually focused terminology of Titles
VI and IX ("No person . . . shall . . . be
subjected to discrimination"), FERPA's
provisions speak only to the Secretary of
Education, directing that "[n]o funds shall
be made available" to any "educational
agency or institution" which has a
prohibited "policy or practice."  20 U.S.C.
§ 1232g(b)(1).  This focus is two steps
removed from the interests of individual
students and parents and clearly does not
confer the sort of "individual entitlement"
that is enforceable under § 1983.

<u>Id.</u> at 287 (citing <u>Alexander v. Sandoval</u>, 532 U.S. 275, 288-89,

121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001), <u>Cannon v. Univ. of</u>

<u>Chi.</u>, 441 U.S. 677, 690, n.13, 99 S. Ct. 1946, 60 L. Ed. 2d 560

(1979), and <u>Blessing v. Freestone</u>, 520 U.S. 329, 343, 117 S. Ct.

1353, 137 L. Ed. 2d 569 (1997)).

In this case, Plaintiffs allege a violation of FERPA

and Section 1983 as a result of the distribution of a "portion

of the infant and parents private personal and confidential

school records."  (Compl. ¶ 9.)  Unfortunately, Plaintiffs

claims fail for two important reasons.  First, Plaintiffs have

8

failed to establish that the information "distributed" is covered by FERPA, and this Court cannot fathom how it could be, considering the information does not appear to be a school record at all. Second, and more importantly, however, even if the information was covered by FERPA, Plaintiffs cannot maintain a cause of action for its distribution under <u>Gonzaga</u>. Accordingly, these claims are DISMISSED.

III. <u>Section 1981 Claim</u>

Sections 1981, 1983, and 1985 were enacted to protect individuals against discrimination based on ethnic origin, race, or ancestry. Section 1981, in particular, was aimed at protecting the individual's right to be free from discrimination in making and enforcing contracts. <u>See</u> <u>Gibbs-Alfano v. Burton</u>, 281 F.3d 12, 16 (2d Cir. 2002); <u>see also</u> <u>Smith v. Sav. Bank of Rockland County</u>, No. 91-CV-3088, 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992) ("To violate Section 1981, a defendant must have prevented a plaintiff from making and enforcing contracts"). Specifically, Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts,. . . and to the full and equal benefits of all laws . . . as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a) (2000). Thus, courts in this Circuit require plaintiffs to demonstrate that (a) there has been a substantive violation of plaintiff's right to make contracts

9

based on his race, and (b) the named defendants can be held liable for that violation. Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 654 (S.D.N.Y. 1994), aff'd, 104 F.3d 353 (2d Cir. 1996).

In Lauture v. IBM Corp., the Second Circuit held that an employment at-will relationship can constitute a contract for purposes of Section 1981. 216 F.3d 258, 261-62 (2d Cir. 2000). Although employers are free to terminate at-will employees for good cause, bad cause, or no cause at all, they are not permitted to fire at-will employees for illicit causes. Id. at 263 (citing Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir. 1998)). In reaching that decision, the court emphasized that "to prevent at-will employees from suing under § 1981 would deny protection from workplace discrimination to a significant number of people . . . ." Id. at 263; see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68 (2d Cir. 2000) (holding that an at-will employee may maintain a cause of action for racial discrimination pursuant to § 1981). Under Lauture, Plaintiff in this case must allege sufficient facts to plausibly show that: (1) she is a member of a racial minority; (2) Defendants' had an intent to discriminate against her on the basis of race; and (3) the discrimination suffered concerned one or more of the activities enumerated in § 1981. 216 F.3d at 261.

In examining the Complaint, and the information upon which it relies, the Court finds that Plaintiffs completely fail to allege sufficient facts to satisfy all three elements of a Section 1981 claim, as set forth in Lauture. Plaintiffs do not (1) state that they are members of a racial minority, (2) show Defendants' intent to discriminate, or (3) that their ability to enter into contracts has been impaired.

For the foregoing reasons, Plaintiffs' § 1981 claims are DISMISSED.

IV. Section 1983 Claim

Section 1983 provides that [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (2000). To state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. New York, 985 F.2d 94, 98 (2d Cir. 1993) (overruled on other grounds). Section 1983 does not create a substantive right; rather, to recover, a plaintiff must

establish the deprivation of a separate, federal right.  See
Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

Additionally, Plaintiff asserts her Equal Protection
and Due Process Claims under the Fourteenth Amendment.  On one
hand, the "purpose of the equal protection clause of the
Fourteenth Amendment is to secure every person within the
State's jurisdiction against intentional and arbitrary
discrimination, whether occasioned by express terms of a statute
or by its improper execution through duly constituted agents."
Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct.
1073, 145 L. Ed. 2d 1060 (2000) (citation omitted).  "[T]he
Equal Protection Clause requires that the government treat all
similarly situated people alike."  Cobb v. Pozzi, 363 F.3d 89,
110 (2d Cir. 2003).  "To state a claim for an equal protection
violation, [Plaintiffs] must allege that a government actor
intentionally discriminated against them on the basis of race,
national origin or gender . . . ."  Hayden v. County of Nassau,
180 F.3d 42, 48 (2d Cir. 1999); see also United States v. City
of Yonkers, 96 F.3d 600, 611 (2d Cir. 1996) ("A plaintiff is
required to show not only that the state action complained of
had a disproportionate or discriminatory impact but also that
the action was taken with intent to discriminate.").

To establish that a defendant is acting under "color
of state law," a plaintiff must plausibly show that the

individual exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." Polk County v. Dodson, 454 U.S. 312, 317-318, 325, 102 S. Ct. 445, 449, 70 L. Ed. 2d 509 (1981) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)). Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983. In such a case, a plaintiff must demonstrate that the private wrongdoer willfully collaborated with an official acting under color of state law in depriving plaintiff of the federal right. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605, 26 L. Ed. 2d 142 (1970) ("Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute." (internal citations omitted)).

　　As with their other claims, Plaintiffs utterly fail to assert sufficient facts to establish any claim under section 1983. These claims are, therefore, DISMISSED.

V.　Monell-based Claims

　　To prevail against a municipality in a Section 1983 action, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right. See

13

Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008); Zahra v. Southold, 48 F.3d 674, 685 (2d Cir. 1995); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977). "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (citations omitted). A plaintiff also has the burden of showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." Springfield v. Kibbe, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119, 94 L. Ed. 2d 293 (1987) (O'Connor, J., dissenting).

In this case, Plaintiffs have not shown that they were deprived of a constitutional right or that the District had an official policy to inflict such an injury. Accordingly, Plaintiffs' Monell claims are DISMISSED.

VI. Section 1985 Claim

Plaintiffs have also alleged a conspiracy to violate their Constitutional rights in violation of Section 1985. In

14

order to plausibly state a cognizable claim under the pertinent provisions of Section 1985, Plaintiffs must allege that (1) they are members of a protected class, that (2) the Defendants conspired to deprive them of their protected constitutional rights, that (3) the Defendants acted with class-based, invidiously discriminatory animus, and that (4) they suffered damages as a result of the Defendants' actions. See 42 U.S.C. § 1985(2), (3); Griffin v. Breckenridge, 403 U.S. 88, 102-103, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). A plaintiff must aver some "class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). A plaintiff must also show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Id. at 147. "Vague or conclusory allegations," without more, are not enough to sustain a Section 1985 action. See Powell v. Workmen's Comp. Bd. of New York, 327 F.2d 131, 137 (2d Cir. 1964) ("It was incumbent upon [plaintiff] to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."). Unlike Section 1983, private persons, as well as state actors, may be held liable under § 1985, provided, however, that the factual allegations demonstrate all of the essential elements of the claim.

Once again, Plaintiffs provide absolutely no detail to plausibly state a cognizable claim under Section 1985. These claims are DISMISSED.

VII. Title VI Of The Civil Rights Act Of 1964 ("Title VI")

Although they initially purport to bring their claims pursuant to Title VII, 42 U.S.C. § 2000e, Plaintiffs later make reference to Title VI. Because Plaintiffs make no other reference to Title VII, the Court cannot find a Title VII claim, and they were not engaged in a protected activity, the Court construes Plaintiffs' claims under Title VI, 42 U.S.C. § 2000d.

Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. This statute prohibits federal funding from going to any person, organization, or government agency that discriminates on the basis of race.

To state a claim under Title VI, Plaintiffs must demonstrate: (1) the District discriminated against the Plaintiffs on the basis of race; (2) the discrimination was intentional, and (3) the discrimination was a substantial and motivating factor for the District's actions. See Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir. 2001). It is well

established that "private individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages." Alexander v. Sandoval, 532 U.S. 275, 279, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001); see Peters v. Jenney, 327 F.3d 307, 315 (4th Cir. 2003) ("It is well settled that there is an implied private right of action to enforce [Title VI's] core prohibition of discrimination in federally-financed programs.") (citations omitted). In Sandoval, the Supreme Court clarified and reiterated that "Title VI itself directly reaches only intentional discrimination." Id. at 281.

To make a claim for Title VI retaliation, Plaintiff must show: (1) "participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protective activity and defendants' adverse action." McKie v. New York University, No. 94-CV-8610, 2000 WL 1521200, at *4 (S.D.N.Y. Oct. 13, 2000).

Plaintiffs' Complaint is plainly insufficient to establish the requirements of a Title VI claim. Accordingly, these claims are DISMISSED.

VIII. State Law Claims

A. Notice Of Claim Requirement

In addition to those claims previously discussed, Plaintiffs allege several state tort claims, including

17

intentional, reckless, or negligent infliction of emotional distress, and negligent supervision.

Subsection 50-I of New York General Municipal Law provides:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this chapter, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . .

N.Y. Gen. Mun. Law § 50-i (2007). Section 50-e states, in part:

> 1. When service required; time for service; upon whom service required.
>
> (a) In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a

representative of the decedent's estate.

N.Y. Gen. Mun. Law § 50-e (2007).  Thus, as an initial matter, the Plaintiffs were required to serve a notice of claim on the District within ninety days after their purported claims arose. Although it appears that Plaintiffs may have filed a notice of claim, they fail to establish that it was served on the District within the required ninety-day time period.  These claims should be dismissed on this ground alone.

B.    <u>Intentional, Reckless, Or Negligent Infliction Of Emotional Distress</u>

Moreover,  Plaintiffs  altogether  fail  to  allege sufficient facts to establish their claims.  Under New York law, the torts of intentional and negligent infliction of emotional stress share three common elements:  (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.  A claim based on intentional infliction of emotional distress also requires that the defendant intend to cause severe emotional distress.  <u>See Bender v. City of New York,</u> 78 F.3d 787, 789 (2d Cir. 1996) (citing <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993); <u>Sylvester v. City of New York</u>, 385 F. Supp. 2d 431, 441-42 (S.D.N.Y. 2005). Additionally, it is well settled that the "'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such

recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.'" Jason v. Krey, 2009 WL 614961, at *1 (App. Div. Mar. 10, 2009) (quoting Creed v. United Hosp., 190 A.D.2d 489, 491, 600 N.Y.S.2d 151 (App. Div. 1993)); see, e.g., Friedman v. Meyer, 90 A.D.2d 511, 512, 454 N.Y.S.2d 909 (App. Div. 1992), appeal dismissed 59 N.Y.2d 763 ("plaintiff['s] wife may not recover for emotional and psychic harm as a result of [a] stillborn birth").

In this case, Plaintiffs fail to establish any of the elements that are required to show either intentional, reckless, or negligent infliction of emotional distress, including, by the way, that they suffered any distress at all. These claims are, therefore, DISMISSED.

C.   Negligent Hiring And Negligent Supervision

Finally, Plaintiffs allege negligent hiring and negligent supervision. "'A claim based on negligent hiring and supervision requires a showing that defendant[] knew of the employee's propensity to [commit the alleged acts] or that defendant[] should have known of such propensity had [it] conducted an adequate hiring procedure[.]'" Honohan v. Martin's Food of S. Burlington, 679 N.Y.S.2d 478 (App. Div. 1998) (quoting Ray v. County of Delaware, 657 N.Y.S.2d 808 (App. Div.

1997)); see Steinborn v. Himmel, 9 A.D.3d 531, 533, 780 N.Y.S.2d 412 (App. Div. 2004).

To establish a claim for negligent supervision, plaintiffs must show (1) the employee caused them some harm, (2) the employer's lack of supervision, and (3) that the employer knew of the employee's propensity for the type of behavior that caused plaintiffs harm. See Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 533 (S.D.N.Y. 1998); see, e.g., Wilson v. Diocese of N.Y. of Episcopal Church, No. 96-CV-2400, 1998 WL 82921, at *4 (S.D.N.Y. Feb. 26, 1998) (holding that neither the Diocese nor the Trinity Defendants knew or should have known of any alleged propensity of the employee to commit sexual assault both prior to hiring him and throughout the period of his employment); Kirkman v. Astoria Gen. Hosp., 611 N.Y.S.2d 615, 616 (App. Div. 1994) ("While an employer may be required to answer in damages for the tort of an employee against a third party when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm, there is no evidence here that [defendant] had any such knowledge.") (citation omitted).

Here, Plaintiffs fail to present evidence regarding any of the required elements. Their claim for negligent hiring and supervision, therefore, must be DISMISSED.

## CONCLUSION

For the reasons set forth above, the District's and O'Ferrall's motions are GRANTED. Additionally, the Complaint fails to state a claim against all remaining Defendants. Accordingly, Plaintiffs' Complaint is hereby DISMISSED. The Clerk of the Court is directed to terminate all pending motions and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      March 31, 2010
            Central Islip, New York